UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL MARTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3119-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge, Doc. 13, this case has been transferred to the undersigned for a final ruling. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 17, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I.      BACKGROUND**[1]

**A.      Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits under the Social Security Act ("the Act"). In May 2012, Plaintiff filed for benefits, claiming that he became disabled in September 2011. Doc. 12-6 at 2. 89). His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2-5, 13-15, 16-25; Doc. 12-4 at 2-3; Doc. 12-5 at 2, 13-16.

---

[1] The following background comes from the transcript of the administrative proceedings, which can be found at Doc. 12.

B.      **Factual Background**

Plaintiff was 49 years old on the date he applied for benefits, and he had a high school education and past relevant work experience as a financial advisor, forklift operator, office manager, and admitting agent.  Doc. 12-3 at 36, 48-49.  Following a serious car accident in September 2011, Plaintiff presented to a clinic for severe pain in his back, right arm, and shoulders.  Doc. 12-9 at 5.  He attended physical therapy at the clinic for five months and, over the course of time, he exhibited numbness and tingling down his right arm into his hand, muscle spasms, limited range of motion, weakness in the cervical spine and right shoulder, and numbness in his thumbs.  Doc. 12-9 at 6.  The physical therapist noted that Plaintiff had "significant difficulty in lifting and overhead reaching," but the probable duration of his condition was only five to six months.  Doc. 12-9 at 9, 29.

In October 2011, Plaintiff underwent an MRI of the cervical spine, which revealed disc herniations at C3-4 and C4-5 and a disc bulge at C5-6 with superimposed subligamentous disc herniation all of which created central canal stenosis.  Doc. 12-9 at 35.  Later that month, Plaintiff underwent a nerve conduction study/electromyogram, which confirmed the presence of a left-sided ulnar motor neuropathy across the elbow with right C6 radiculitis.[1]  Doc. 12-9 at 37. In November 2011, Plaintiff saw Dr. Albert G. Tesoriero, M.D. for a pain management consultation.  Doc. 12-9 at 43.  He reported that he was only taking acetaminophen for pain relief and that physical therapy was giving him moderate relief.  Doc. 12-9 at 43.  Dr. Tesoriero noted that Plaintiff had numbness of the right hand and muscle tenderness along his right cervical spine and trapezius muscle.  Doc. 12-9 at 43.  He prescribed various pain medications and advised Plaintiff to continue physical therapy.  Doc. 12-9 at 44.  While noting that Plaintiff had

---

[1] Radiculitis is a "disorder of the spinal nerve roots." STEDMAN'S MED. DICT. 748650 (2014) (available on Westlaw).

2

"significant disc disease of the cervical spine," Dr. Tesoriero determined that Plaintiff was nevertheless a good candidate for trigger point injections, which he administered. Doc. 12-9 at 44-45. On follow-up, two weeks later, Plaintiff reported a ten percent improvement following his injection, but that he still had numbness in both hands, especially when he was sitting or standing up. Doc. 12-9 at 46.

In December 2011, Plaintiff sought treatment from Dr. Chris Dyer, D.O., who found tenderness and spasm of the paraspinal muscles, decreased range of motion in flexion, extension, and side bending, and a slight decrease in grip strength on both sides. Doc. 12-9 at 48. Dr. Dyer assessed Plaintiff with cervicalgia, cervical radicular symptoms, and C6 radiculitis. Doc. 12-9 at 48. Dr. Dyer administered a cervical epidural steroid injection to Plaintiff, but Plaintiff reported that it did not help. Doc. 12-9 at 48-49, 51.

In January 2012, Plaintiff presented to Dr. James E. Laughlin, D.O., complaining of right shoulder pain. Doc. 12-8 at 23. Dr. Laughlin noted that an MRI of Plaintiff's right shoulder showed evidence of anterior impingement and a "SLAP" lesion, a separated acromioclavicular joint, and a glenoid labial tear to the right shoulder.[2] Doc. 12-8 at 23. Plaintiff demonstrated pain on abduction and external rotation of the right shoulder and muscle weakness. Doc. 12-8 at 23. Dr. Laughlin administered injections of pain medication into the right shoulder, but Plaintiff reported that they did not help. Doc. 12-8 at 24; Doc. 12-9 at 53. On examination, however, Plaintiff demonstrated less pain on abduction and rotation of the right shoulder, less pain on palpation, increased strength, and a "much improved" range of motion. Doc. 12-9 at 53.

---

[2] A SLAP lesion is a pattern of injury to the superior labrum of the shoulder that begins posteriorly and extends anteriorly, stopping before or at the mid-glenoid notch. NAT'L CTR. FOR BIOTECH. INFO. AT THE U.S. NAT'L LIB. OF MED., *SLAP Lesions of the Shoulder*, available at http://www.ncbi.nlm.nih.gov/pubmed/2264894. The glenoid labrum is a "ring of fibrocartilage attached to the margin of the glenoid cavity of the scapula to increase its depth." STEDMAN'S MED. DICT. 474750 (2014) (available on Westlaw).

In January 2012, Plaintiff sought treatment with Dr. Nathanial Kho, M.D., for neck pain. Doc. 12-9 at 58. His examination revealed decreased pinprick sensation in the right distal forearm and right thenar eminence and thumb, and he demonstrated muscle strength of four to five out of five.[3] Doc. 12-9 at 58. Dr. Kho's impression was cervical sprain/strain with evidence of a right-sided C6 cervical radiculopathy. Doc. 12-9 at 58. By February, Plaintiff informed Dr. Kho that he continued to have neck pain and numbness in his right hand as well as cramping of the hand, and he was assessed with brachial neuritis or radiculitis.[4] Doc. 12-9 at 60.

On Dr. Kho's recommendation, in December 2012, Plaintiff sought treatment with a neurosurgeon, Dr. John R. Tompkins, for severe neck and arm pain. Doc. 12-10 at 45; Doc. 12-11 at 14. Examination revealed normal muscle strength and intact sensation in all extremities, no paraspinal muscle spasms or tenderness, and mostly full range of motion in the cervical spine. Doc. 12-11 at 17-18. Dr. Tompkins's impression was that cervical spondylosis with foraminal stenosis at C5-6 was causing Plaintiff's neck and bilateral arm pain. Doc. 12-11 at 15. A January 2013 x-ray of the cervical spine revealed mild spondylosis with slight narrowing of the C5-C6 disc space. Doc. 12-11 at 19. In February 2013, Dr. Tompkins advised that Plaintiff may require surgical intervention, namely an anterior cervical discectomy and fusion for decompression. Doc. 12-11 at 15.

**C.   Administrative Hearing**

At an administrative hearing held in April 2013, a vocational expert ("VE") testified that Plaintiff's prior jobs as a financial advisor, office manager, and admitting agent were all

---

[3] The thenar eminence is "the fleshy mass on the lateral side of the palm; the radial palm; the ball of the thumb." STEDMAN'S MED. DICT. 286330 (2014) (available on Westlaw).

[4] Brachial neuritis is "a neurologic disorder, of unknown cause, characterized by the sudden onset of severe pain, usually about the shoulder and often beginning at night, soon followed by weakness and wasting of various forequarter muscles, particularly shoulder girdle muscles." STEDMAN'S MED. DICT. 32350 (2014) (available on Westlaw).

sedentary in nature. Doc. 12-3 at 48-49. The VE averred that a person of Plaintiff's age and education level who had the ability to do a full range of light and sedentary work would be able to do any of those prior jobs. Doc. 12-3 at 50-52.

**D.    The ALJ's Findings**

In April 2013, the ALJ issued an unfavorable decision applying the customary five-step sequential analysis found in 20 C.F.R. § 404.1520(a) (2013). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. Doc. 12-3 at 18. At step two, the ALJ found that Plaintiff had one severe impairment: cervical disc disease. Doc. 12-3 at 18. The ALJ also determined that Plaintiff had the non-severe impairments of mild thoracic disc disease and brachial neuritis/radiculitis. Doc. 12-3 at 21. At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. Doc. 12-3 at 22. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. Doc. 12-3 at 22. Proceeding to step four, the ALJ concluded that Plaintiff could perform his past work as a financial adviser, office manager, and administrative agent. Doc. 12-3 at 24. Accordingly, the ALJ held that Plaintiff was not disabled at any relevant time and was not entitled to an award of disability benefits under the Act. Doc. 12-3 at 25.

**II.  APPLICABLE LAW**

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

**A. Whether the ALJ's RFC violates the dictates of *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995).**

Plaintiff argues that the ALJ had no basis for the RFC he issued because no physician endorsed the sedentary work abilities the ALJ imposed on Plaintiff or provided a medical source statement, and reversal is thus required under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). Doc. 16 at 9-11. Plaintiff asserts that he was prejudiced by the ALJ's error because the evidence suggests significant limitations in reaching and handling, which were absent from the ALJ's RFC finding. Doc. 16 at 11-12.

Defendant responds that Plaintiff's argument has no merit because the ALJ, not a physician, determines a claimant's RFC based on all of the relevant evidence of record. Doc. 17 at 7. Defendant observes that while the ALJ's RFC determination was not identical to that of the state examiners, Plaintiff was not harmed since the ALJ's RFC determination was more restrictive than the doctors' assessments. Doc. 17 at 8-9.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. The appellate court noted that the record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. The court remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the

7

claimant's back condition on his ability to work. 67 F.3d at 557-58. The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

In this case, the ALJ stated that he had considered the opinions of the state agency medical consultants and found that new evidence, including testimony at the administrative hearing, supported that Plaintiff was more limited than the consultants had determined. Doc. 12-3 at 24. The state agency medical consultant found that Plaintiff had not established any manipulative limitations, to include reaching and handling, and that he could perform the full range of light work, i.e., occasionally lift/carry 20 pounds and frequently lift/carry ten pounds, stand/sit/walk six hours, and had the unlimited ability to push/pull. Doc. 12-10 at 65, 67. The consultant noted Plaintiff's diagnoses as neck sprain and strain and brachial neuritis/radiculitis not otherwise specified. Doc. 12-10 at 64. Another state agency medical consultant affirmed that assessment. Doc. 12-11 at 12.

A full range of sedentary work is subsumed in the state agency medical consultants' determination that Plaintiff can perform a full range of light work. In other words, if a claimant can do light work, it is assumed that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or an inability to sit for long periods of time. 20 C.F.R. § 404.1567(b). There is no *Ripley* error here because there were two medical source statements, and the ALJ's finding that Plaintiff could perform even less strenuous work than the consultants had determined was not error. *Id.* Therefore, Defendant is entitled to summary judgment on this ground.

### B. Whether the ALJ erred by failing to perform a function-by-function assessment of Plaintiff's RFC.

Plaintiff asserts that remand is also required because the RFC for the "full range of sedentary work" was not the product of a function-by-function assessment as required by SSR 96-8p. Had the ALJ thoroughly considered all of the non-exertional limitations, Plaintiff argues, he might have recognized Plaintiff's limitations in reaching and handling. Doc. 16 at 12. Plaintiff notes that while an ALJ may delegate the function-by-function analysis to a state agency consultant with whom he agrees, that is not possible in this case because the ALJ rejected the state agency's analysis. Doc. 16 at 12-14. Plaintiff maintains that the RFC determination in this case reflects no function-by-function analysis and gives no consideration to Plaintiff's non-exertional manipulative limitations in handling and reaching. Doc. 16 at 14. Plaintiff argues that he was prejudiced by this error because two of the jobs he was identified as being able to perform require frequent handling and reaching. Doc. 16 at 15.

Defendant responds that the ALJ's decision satisfied SSR 96-8p because it contained a narrative discussion in which he considered the medical and nonmedical evidence of record and explained how the evidence supported his decision. Doc. 17 at 8.

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184 (1996); 20 C.F.R. § 416.923. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* The assessment must include a narrative discussion of how the evidence supports each conclusion, citing both specific medical facts and nonmedical evidence. *Id.* With regard to Plaintiff's symptoms, the ALJ is only required to be thorough, resolve inconsistencies, and set forth a

9

logical explanation of the symptoms.  *Id.*  The final responsibility for deciding a claimant's RFC is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(1).

Here, a review of the ALJ's decision confirms that he identified Plaintiff's limitations and adequately assessed his work-related abilities on a function-by-function basis.  Doc. 12-3 at 18- The ALJ determined that Plaintiff had the severe impairments of cervical disc disease and the non-severe impairments of mild thoracic disc disease and brachial neuritis/radiculitis.  Doc. 12-3 at 18, 21.  Additionally, the ALJ discussed Plaintiff's other diagnoses and symptoms at length. Doc. 12-3 at 18-21.  Lastly, the ALJ noted Plaintiff's allegations about his inability to perform various activities such as standing, reaching, walking concentrating, using his hands, and the like.  Doc. 12-3 at 23.  The ALJ then went on to find that Plaintiff retained the ability to remain attentive and responsive in a work setting and carry out normal work assignments in a satisfactory manner, and had the RFC to perform a full range of sedentary work as testified to by the VE in the administrative hearing.  Doc. 12-3 at 24-25.

Although the ALJ arguably could have been more explicit in addressing the individual functions listed in SSR 96-8p, reversal is not warranted because (1) the ALJ permissibly relied on the function-by-function assessment made by the state agency medical consultants regarding Plaintiff's abilities; and (2) then imposed additional restrictions on Plaintiff's abilities by limiting him to sedentary work.  20 C.F.R. § 404.1567(b) (providing that sedentary work is generally subsumed within the light work category); *Brown v. Astrue*, No. 08-cv-255-D, 2009 WL 64117, at *4 (N.D. Tex. 2009) (Fitzwater, C.J.) (holding that an ALJ had sufficiently factored a claimant's limitation into the RFC assessment via adoption of the limitations specified in the state medical consultant's RFC assessment); *Latham v. Astrue*, No. 07-cv-86-BD, 2008 WL 4635396, at *3 (N.D. Tex. 2008) (Kaplan, J.) (holding that an ALJ may rely on the function-by-

function assessment made by the state medical consultant regarding a claimant's exertional limitations in determining a claimant's RFC in lieu of requiring the ALJ to engage in an explicit function-by-function analysis in his decision). Contrary to Plaintiff's assertion, the ALJ did not reject the assessments of the state agency medical consultants merely by including additional restrictions in his RFC. And Plaintiff offers no legal support for such a conclusion. In any event, Plaintiff's substantial rights were not affected by the ALJ's failure to be more specific. *See* Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). There is no reason to believe that the ALJ would have reached a different result had he made more specific findings. Accordingly, Defendant is entitled to summary judgment on this ground.

### C. Whether the ALJ applied the incorrect severity standard to Plaintiff's shoulder impairment and neuropathy.

Plaintiff next contends that the ALJ erred by applying the incorrect legal standard to his shoulder impairment and neuropathy and then failing to find those impairments severe. Doc. 16 at 15-18. He asserts that the error harmed him because the ALJ excluded from the RFC assessment his non-exertional manipulative limitations in reaching and handling. Doc. 16 at 15-18.

Defendant responds that any error in this regard is harmless because the ALJ did not adjudicate this case at step two of the sequential analysis, and Plaintiff cannot demonstrate harm that stems from any error the ALJ made in misapplying *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). Doc. 17 at 4-6. Plaintiff replies that the error was harmful because the ALJ did not incorporate Plaintiff's limitations in reaching and handling at step four of the analysis and instead found him capable of a full range of sedentary work. Doc. 18 at 3-4.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. See *Stone*, 752 F.2d at 1104-05. Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. The *Stone* court also held that it would assume the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to *Stone* or a similar opinion, or by an express statement that the court's construction of section 404.1520(c) was used. *Id.* at 1106. The Fifth Circuit more recently held, however, that *Stone* error can be harmless even where the ALJ fails to identify the specific applicable legal standard or cite to *Stone*. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

In the case at bar, the ALJ clearly committed a *Stone* error because he stated that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities." Doc. 12-3 at 17; *Stone*, 752 F.2d at 1104-05; *cf. Bradford v. Astrue*, 3:10-cv-2302-BK, 2011 WL 1297528, at *5 (N.D. Tex. 2011) (Toliver, J.) (holding that an ALJ's statement that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities" is the same standard *Stone* found to be impermissible). Further, the ALJ also stated that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work." Doc. 12-3 at 17. This "minimal effect" standard is also wholly inconsistent with *Stone*, and courts in this district have universally refused to find that this standard comports with the standard set out in *Stone*. *Bradford*, 2011 WL 1297528 at *5 (collecting cases).

Nevertheless, this Court and other courts in this circuit have found that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *Jones v. Astrue*, 821 F.Supp.2d 842, 849 (N.D. Tex. 2011) (Toliver, J.) (stating "if an ALJ proceeds past step two of the sequential evaluation process, it is presumed that the ALJ found that a severe impairment existed unless the ALJ states otherwise.") (collecting cases). In those cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis, which stages are premised on a finding at the second step of the analysis that the impairments were severe. *See Reyes*, 915 F.2d at 154 & n.1. This is to be distinguished from the situation where the ALJ commits a *Stone* error by applying an incorrect severity standard, rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to the impairments he found to be severe. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In this case, the ALJ applied the wrong severity standard when finding that Plaintiff had the sole severe impairment of cervical disc disease and the non-severe impairments of mild thoracic disc disease and brachial neuritis/radiculitis. Doc. 12-3 at 21. Nevertheless, remand is

13

not required if the error was harmless, i.e., if the ALJ actually considered the non-severe impairments at step four of the sequential analysis or, if the ALJ did not, Plaintiff's substantial rights were not affected thereby. *Taylor*, 706 F.3d at 603; *Mays*, 837 F.2d at 1364.

After the ALJ found Plaintiff's thoracic disc disease and brachial neuritis/radiculitis non-severe, he went on to discuss Plaintiff's claims of, *inter alia*, numbness and pain in his arms and hands, a rotator cuff tear, and radiculitis and how those symptoms and impairments affected Plaintiff's ability to engage in activities of daily living. Doc. 12-3 at 22-23. As is relevant here, the ALJ noted that Plaintiff repeatedly claimed to have difficulty reaching and using his hands. Doc. 12-3 at 23. The ALJ then found that the evidence of record reflected that Plaintiff had sustained cervical, thoracic, and lumbar strain from his car accident for which he had received therapy and medication with some improvement in his symptoms, and the most recent neurological testing showed no evidence of neuropathy or radiculopathy. The ALJ concluded that Plaintiff's allegations regarding his pain level were not entirely credible held that Plaintiff could perform the full range of sedentary work. Doc. 12-3 at 23.

Based on the ALJ's discussion of Plaintiff's symptoms, allegations, and the medical evidence, it appears that the ALJ did consider Plaintiff's thoracic disc disease and brachial neuritis/radiculitis at step four of the sequential evaluation. Accordingly, the *Stone* error that occurred in this case was harmless. *Taylor*, 706 F.3d at 603. Even if the ALJ did not consider those impairments severe, however, Plaintiff's substantial rights were not affected thereby. The evidence of record reflects that while Plaintiff clearly sustained injuries due to a car accident, he did not always consistently take his prescription pain medication (and, in fact, tested positive for marijuana and cocaine on one occasion), and his grip strength, range of motion, degree of pain, and sensation greatly improved over time. Doc. 12-9 at 43, 53, 58; Doc. 12-10 at 84, Doc. 12-11

at 17-18. The ALJ's decision to deny benefits was thus supported by substantial evidence. Defendant is entitled to summary judgment on this ground.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 17, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on May 5, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE